**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

GARY HAMILTON,

     Plaintiff,

     v.

THOMAS W. HARKER, *Acting Secretary,*
*Department of the Navy*,

     Defendant.

Civil Action No. TDC-19-1489

**MEMORANDUM OPINION**

Plaintiff Gary Hamilton, a 62-year old African American man currently employed by the United States Department of the Navy as an Industrial Hygienist, has filed suit against the Secretary of the Navy ("the Navy") alleging race discrimination, age discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (2018), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634 (2018), based on several unsuccessful applications between 2017 and 2019 for positions with the Navy similar to the one for which he has since been hired. The Navy has filed a Motion to Dismiss Hamilton's claims. Having reviewed the briefs and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Navy's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

**I.    Employment Applications**

Beginning in or about 1986, Hamilton worked for the Navy as an Industrial Hygienist and generally received "outstanding" or "exceeding expectation[s]" ratings on his performance

evaluations.  2d Am. Compl. ¶ 5.30, ECF No. 40.  In or about 1997, Hamilton left his position with the Navy, but in 2017, he sought to return, applying for a position as an Industrial Hygienist at the Naval Health Clinic Patuxent River ("NHC Patuxent River") under Announcement Number ("Ann. No.") ST-10008595-17-SEW, with a closing date of May 5, 2017 ("the May 2017 NHC Patuxent River Position").  On May 23, 2017, Hamilton had a phone interview for this position with Charles Lehr, then the Lead Industrial Hygienist at NHC Patuxent River, who is white.  According to Hamilton, during that phone interview, Lehr asked Hamilton to state the color of his eyes.  In response, Hamilton told Lehr that he had brown eyes but added that the color of his eyes should have no bearing on the hiring decision.  After responding to additional questions that Hamilton considered to be discriminatory, Hamilton informed Lehr that he was African American and over 40 years old, and thus that he was in a protected class.  Lehr was silent for a moment and did not respond to these statements.

On or about May 24, 2017, Hamilton had a second phone interview for the position, conducted by a three-member panel consisting of Lehr, Keith Kilpatrick, and Kimberly Tayman. Kilpatrick was then the Supervisory Industrial Hygienist at Naval Branch Health Clinic Indian Head ("NBHC Indian Head").  Hamilton alleges that Lehr and Kilpatrick are close friends who regularly participate in each other's interviews of job applicants.  Lehr and Kilpatrick both gave Hamilton low scores for the interview, which Hamilton alleges were motivated by discriminatory intent and retaliatory animus arising from Hamilton's objections to improper questions during the first interview.  As additional evidence of the discriminatory and retaliatory animus, Hamilton cites Lehr's handwritten interview notes, in which Lehr first recommended him for the position of Industrial Hygienist, but later crossed that recommendation out and changed it to "No."  *Id.* ¶ 5.9.

Two candidates received higher scores than Hamilton. Hamilton alleges that these candidates were not African American, were younger than him, or both. Both of those candidates were offered the position but turned it down, leaving Hamilton the next highest scoring candidate, ranking above one other candidate. Nevertheless, Hamilton was not offered the position, which remained unfilled.

Soon after, Hamilton applied for an Industrial Hygienist position at NBHC Indian Head, Ann. No. ST-10009258-17-CMR, with a closing date of May 19, 2017 ("the May 2017 NBHC Indian Head Position"). Kilpatrick had the authority to decide which applicants would be interviewed but denied an interview to Hamilton. Hamilton was the only one of the four applicants referred to Kilpatrick for a possible interview who was not granted an interview. During a subsequent Equal Employment Opportunity ("EEO") investigation, Kilpatrick failed to provide a clear reason or rationale for the failure to interview him. Hamilton alleges that having coordinated with Lehr on the interview for the May 2017 NHC Patuxent River Position, Kilpatrick shared Lehr's discriminatory and retaliatory animus against Hamilton.

From late 2017 through 2019, Hamilton applied for eight other Industrial Hygienist positions at either NHC Patuxent River or NBHC Indian Head and was repeatedly not selected. Specifically, Hamilton identifies the following additional positions for which he applied but was not selected:

1. Ann. No. DE-10093728-18-DDG, with a closing date of December 20, 2017
2. Ann. No. ST-10217674-18-KG, with a closing date of June 3, 2018
3. Ann. No. ST-10385990-19-SC, with a closing date of January 22, 2019
4. Ann. No. ST-10503312-19-AJP, with a closing date of June 3, 2019
5. Ann. No. ST-10540041-19-MPM, with a closing date of July 25, 2019
6. Ann. No. ST-10600254-19-MPM, with a closing date of September 25, 2019
7. Ann. No. DE-10619736-20-BF, with a closing date of October 11, 2019
8. Ann. No. DE-10628206-20-TG, with a closing date of October 21, 2019

(collectively, "the Eight Positions").  The Court will refer to these individual positions by their closing date.

For many of these positions, Hamilton provides no additional allegations.  For the October 11, 2019 Position, Hamilton was offered an interview.  However, after inquiring about the composition of the panel and whether the process would be different from before, Hamilton declined to attend the interview because one of the panel members, an African American man, had previously interviewed him for a position for which he was not hired, and because his questions were not adequately answered.  When Hamilton informed the selection panel that he remained interested in the position but would be traveling out of the country for a few days, the October 21, 2019 Position was posted.  Hamilton alleges that the Navy posted this announcement, which was for the same position as the October 11, 2019 Position, because it believed Hamilton would not see the announcement because of his international travel.  Hamilton saw the announcement on the internet while he was abroad and applied, but he was not selected.

## II.    EEO Activity

During the course of these events, Hamilton initiated EEO complaints on two occasions. Following his rejection for the May 2017 NHC Patuxent River Position and the May 2017 NBHC Indian River Position (collectively, "the May 2017 Positions"), Hamilton contacted an EEO Counselor at the Navy on July 5, 2017.   Hamilton asserted that Lehr, in denying him the May 2017 NHC Patuxent River Position, discriminated and retaliated against him because he had objected to Lehr's question about his eye color and because he informed Lehr that he was African American and over the age of 40.  As for the May 201 NBHC Indian River Position, Hamilton alleged that Kilpatrick failed to interview or hire Hamilton because he was conspiring with Lehr against Hamilton based on Lehr's discriminatory and retaliatory intent.

4

After the EEO Counselor interviewed Lehr, Kilpatrick, and Hamilton and issued an EEO Counselor's Report on August 22, 2017, Hamilton filed a Formal Complaint of Discrimination ("the First EEO Complaint") on August 23, 2017, in which he asserted that he had not been hired for the May 2017 NHC Patuxent River Position and the May 2017 NBHC Indian Head Position because of his race and his age, and in retaliation for his objection to Lehr's question about eye color during the May 23, 2017 interview.  The formal investigation into the First EEO Complaint was closed in approximately March 2018.

On July 9, 2019, Hamilton learned that he would not be offered an interview for the June 3, 2019 Position, an Industrial Hygienist position at NBHC Indian Head.  Hamilton contacted an EEO Counselor at the Navy on July 12, 2019.  Hamilton asserted that the decision by Kenneth Waits, who had replaced Kilpatrick as the Supervisory Industrial Hygienist at NBHC Indian Head, not to interview him for this position was in retaliation for his the First EEO Complaint filed against Kilpatrick.

On August 14, 2019, Hamilton's EEO Counselor conducted his final interview with Hamilton on this matter. That same day, Hamilton filed a second Formal Complaint of Discrimination ("the Second EEO Complaint"), in which he asserted that he had not been selected for an interview for the June 3, 2019 Position in retaliation for the First EEO Complaint.   On October 22, 2019, Hamilton sought to add  retaliation claims to the Second EEO Complaint based on the hiring decisions for the October 11, 2019 and October 21, 2019 Positions.  On October 24, 2019, the Navy EEO Office amended the Second EEO Complaint to include those claims, as well his claims relating to the September 25, 2019 Position.

### III.     The Complaint

On April 17, 2019, Hamilton filed the present action in the United States District Court for the District of Columbia.  The original Complaint asserted claims of race and age discrimination, as well as retaliation, based on the Navy's failure to hire him for the May 2017 Positions.  On November 7, 2019, after the case had been transferred to this Court, Hamilton filed a First Amended Complaint in which he expanded his allegations to include the Navy's failure to hire him for all of the other Eight Positions.  On July 15, 2020, Hamilton filed a Second Amended Complaint that did not add claims relating to any additional positions.  At present, Hamilton alleges claims of race discrimination and retaliation under Title VII, and age discrimination under the ADEA, relating to all ten positions.

### DISCUSSION

In its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Navy asserts that the claims relating to all positions other than the May 2017 Positions should be dismissed because Hamilton failed to exhaust administrative remedies for those claims.  In the alternative, and for the positions for which exhaustion is not contested, the Navy argues that Hamilton has failed to allege sufficient facts to state a plausible claim for relief.

### I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Legal conclusions or conclusory statements do not suffice.  *Id.*  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable

to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  The Navy has included with its Motion documents relating to Hamilton's EEO activity, including the EEO Counselor Reports and EEO Complaints, primarily in support of its arguments on exhaustion of administrative remedies.  Although Hamilton objects to their inclusion, in this particular instance, Hamilton has included in his Complaint specific allegations about his EEO activity to demonstrate exhaustion, *see* 2d Am. Compl. ¶¶ 2.2-2.3, so the Court will consider the EEO documents as integral to the Complaint for purposes of that issue.  *See White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (holding that an EEOC charge attached to a motion to dismiss could be considered because it was integral to the complaint).  However, the Court agrees with Hamilton that absent discovery, it is inappropriate on a Motion to Dismiss to consider the factual content of the EEO documents in evaluating the merits of Hamilton's claims.  *See* Fed. R. Civ. P. 12(d).  The Court therefore limits its consideration of the Navy's exhibits only to the issue of exhaustion of administrative remedies.

## II.     Exhaustion of Administrative Remedies

Discrimination claims under both Title VII and the ADEA are generally subject to an administrative exhaustion requirement.  *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1).  If a complainant fails to comply with the applicable administrative procedures, the unexhausted claims are subject to dismissal under Rule 12(b)(6).  *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846, 1849–51 (2019).  "The administrative remedies available for federal employees are significantly

broader" than those available to employees in the private sector. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc). At issue in the Motion are two specific administrative requirements applicable to discrimination claims by federal employees: (1) a 45-day limitation for reporting a claim to an EEO Counselor; and (2) a requirement to wait 180 days following the filing of a formal EEO complaint before filing suit in federal court.

### A.  EEO Counselor Requirement

In general, federal employees challenging allegedly discriminatory employment practices must first contact an EEO Counselor in their federal agency "within 45 days of the date of the matter alleged to be discriminatory" in order to try to resolve the matter informally. 29 C.F.R. § 1614.105(a), (a)(1) (2020). For personnel actions, such as decisions to hire or to terminate, the 45-day clock runs from the "effective date of the action." 29 C.F.R. § 1614.105(a)(1); *see Jakubiak v. Perry*, 101 F.3d 23, 26–27 (4th Cir. 1996). The EEO Counselor attempts to help the parties reach an informal resolution. If at the end of the allotted period for informal resolution, consisting of 30 days subject to extension, the complainant has neither agreed that the issue has been resolved satisfactorily nor elected to pursue alternative dispute resolution, the EEO Counselor conducts a final interview with the complainant and issues a written notice of the right to file a formal complaint within the agency. 29 C.F.R. § 1614.105(d)–(f). The complainant then has 15 days from receipt of that final notice to file a formal EEO complaint with the agency. 29 C.F.R. §§ 1614.105(d), 1614.106(b).

Because Hamilton contacted an EEO Counselor on July 5, 2017, there is no dispute that he fulfilled the 45-day requirement as to the May 2017 Positions. Hamilton also contacted an EEO Counselor on July 12, 2019, three days after he learned that he was not selected for the June 3, 2019 Position, so he plainly satisfied the 45-day requirement for that position. During the

consultations with the EEO Counselor relating to that position, Hamilton informed the EEO Counselor of his claims relating to the September 25, 2019, October 11, 2019, and October 21, 2019 Positions, such that the EEO Counselor authorized Hamilton to include them in his Second EEO Complaint.  Thus, the 45-day requirement was satisfied for those positions as well.

The Navy argues, however, that Hamilton did not meet this requirement for any of the other positions.  Where it is undisputed that Hamilton did not initiate contact with an EEO Counselor at any time between his July 2017 and June 2019 contacts, it is evident that he made no timely contact with an EEO Counselor relating to the December 20, 2017 Position, the June 3, 2018 Position, and the January 22, 2019 Position, as each of those hiring processes occurred long before Hamilton's July 2019 contact with his EEO Counselor.  *See Johnson v. Runyon*, 47 F.3d 911, 920 (7th Cir. 1995) (stating that the 45-day period to consult an EEO Counselor begins when it "should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff" that a personnel action has occurred (citation omitted)).  Further, where there was no specific contact with an EEO Counselor within 45 days after the determination on the July 25, 2019 Position, and that position was not included among the additional positions either listed in his October 22, 2019 Contact Sheet or authorized by the EEO Counselor for inclusion in the Second EEO Complaint, the 45-day requirement was not satisfied for that position.  Accordingly, the claims relating to the December 20, 2017, June 3, 2018, January 22, 2019, and July 25, 2019 Positions were not properly exhausted.

    **B.**    **180-Day Waiting Period**

The Navy also argues that Hamilton failed to exhaust administrative remedies for the June 3, 2019, September 25, 2019, October 11, 2019, and October 21, 2019 Positions by violating another administrative requirement imposing a 180-day waiting period before a federal claim may

be filed.  Once a federal agency takes final action on a Formal EEO Complaint by issuing a final decision, the complainant may appeal the decision to the United States Equal Employment Opportunity Commission ("EEOC") or, within 90 days, file a civil action in federal court.  42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.407(a).  If there has been no final agency action within 180 days of the filing of the Formal EEO Complaint, the complainant may file suit in federal court after that 180-day period has expired.  42 U.S.C. § 2000e-16(c); *see Stewart v. Iancu*, 912 F.3d 693, 699, 702 (4th Cir. 2019) (noting that the 180-day waiting period is an exhaustion requirement and using the date on which the plaintiff filed his "formal administrative complaint of discrimination and retaliation" in calculating the statutory deadline of 180 days from the filing of the "initial charge").

Here, Hamilton filed the Second EEO Complaint, relating to the June 3, 2019 Position, on August 14, 2019, which was thus the trigger date for the 180-day waiting period.  *See Stewart*, 912 F.3d at 702 .  Although Hamilton later amended the Second EEO Complaint on October 24, 2019 to add allegations relating to the September 25, 2019, October 11, 2019, and October 21, 2019 Positions, "the 180-day waiting period does not reset upon subsequent amendments to the administrative complaint."  *See id.* (noting that under the statute, the 180-day period is calculated from the "initial charge").  Hamilton, however, who had already filed the present suit on April 17, 2019, alleging claims relating only to the May 2017 Positions, filed an Amended Complaint on November 7, 2019 to add claims relating to the other Eight Positions, including all four positions addressed by the Second EEO Complaint.  Because Hamilton filed his federal claims relating to these positions before the Navy issued a final action on these claims, and only 85 days after he filed the Second EEO Complaint, he failed to exhaust administrative remedies for the June 3, 2019, September 25, 2019, October 11, 2019, and October 21, 2019 Positions.

Accordingly, Hamilton has failed to exhaust administrative remedies on the claims relating to all Eight Positions other than the May 2017 NHC Patuxent River and NBHC Indian Head Positions.

### C.     ADEA Bypass Option

Although Hamilton failed to exhaust administrative remedies on all of claims relating to the Eight Positions, the Court must consider whether his age discrimination claims relating to those positions may still proceed.    Under the ADEA, federal employees complaining of age discrimination actually do "not have to seek relief from [their] employing agency or the EEOC at all."  *Stevens v. Dep't of the Treasury,* 500 U.S. 1, 6 (1991).   Rather, federal employees can "present the merits of [their claims] to a federal court in the first instance." *Id.*  Courts have referred to this alternative process as the administrative "bypass" option.  *See e.g.*, *Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007).

Under the ADEA:

> When the individual has not filed a complaint concerning age discrimination with the [Equal Employment Opportunity] Commission, no civil action may be commenced by any individual under this section until the individual has given the [Equal Employment Opportunity] Commission not less than thirty days' notice of an intent to file such action.  Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

29 U.S.C. § 633a(d).  By regulation, the notice of intent to file a civil action "must be filed in writing with EEOC, at P.O. Box 77960, Washington, DC 20013, or by personal delivery or facsimile within 180 days of the occurrence of the alleged unlawful practice."  29 C.F.R. § 1614.201(a).  Thirty days must elapse after the notice is provided before the complainant may file suit.  *Id.*

Here, Hamilton does not claim, nor is there any basis to conclude, that he provided the required notice to the EEOC. *See Rann v. Chao*, 346 F.3d 192, 198 (D.C. Cir. 2003) (holding that "the plain language of this statute requires the filing of a notice of intent to sue with the EEOC itself"). Although at least one United States Court of Appeals has allowed the notice requirement to be satisfied by the plaintiff's prior filing of an EEO complaint alleging age discrimination with the EEO Office within the plaintiff's agency of employment, *see Reynolds v. Tangherlini*, 737 F.3d 1093, 1101 n.4 (7th Cir. 2013), Hamilton filed no such complaint relating to the December 20, 2017, June 3, 2018, and July 25, 2019 Positions, and his Second EEO Complaint relating to the June 3, 2019,  September 25, 2019, October 11, 2019, and October 21, 2019 Positions did not allege age discrimination. So even under this expansive reading of the administrative bypass option, Hamilton has not fulfilled the notice requirement to allow him to assert his age discrimination claims without having fully exhausted them. Accordingly, Hamilton's age discrimination claims relating to the Eight Positions may not proceed.

### D.    Retaliation Claims

Hamilton argues that even if he failed to exhaust administrative remedies for the Eight Positions, his retaliation claims relating to those positions nevertheless remain because they need not be exhausted. Unlike a discrimination claim, a retaliation claim may be alleged for the first time in federal court if it alleges retaliation for the filing of an EEOC charge or EEO complaint itself. *Jones v. Calvert Group*, 551 F.3d 297, 302 (4th Cir. 2009); *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (holding that an Army employee could bring a retaliation claim for the first time in federal court when the allegation was that the Army retaliated against her for filing an EEOC charge). This exception to the exhaustion requirement applies only if the alleged retaliation relates to the filing of the EEOC charge or EEO complaint underlying the federal complaint. *See*

*Jones*, 551 F.3d at 304 (finding that a retaliation claim did not need to be exhausted where it could be construed as relating to retaliation for the filing of a second EEOC charge, which gave rise to the federal complaint), *abrogated on other grounds by Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846, 1849–51 (2019).  To the extent that a retaliation claim relates to an earlier EEOC charge or EEO complaint, or some other form of protected activity, the Court may not consider it absent exhaustion.  *See id.*

Here, Hamilton alleges that all of his failed applications for the Eight Positions were, at least in part, the result of retaliation for filing the First EEO Complaint in August 2017.  Because follow-on retaliation claims for which the protected activity was the filing of the EEO complaint at issue in the federal action need not be exhausted, those particular retaliation claims remain and will not be dismissed.  *See id*.  To the extent that Hamilton's retaliation claims relating to these Eight Positions are based on any other protected activities, those claims will be dismissed.

In summary, as discussed above, all of Hamilton's race and age discrimination claims relating to the Eight Positions will be dismissed for failure to exhaust administrative remedies.  As to those same Eight Positions, Hamilton's retaliation claims based on the protected activity of filing of the First EEO Complaint need not be exhausted and remain in the case, but any retaliation claims based on other alleged protected activity will be dismissed.

## III.    Sufficiency of the Allegations

The Navy asserts that the remaining claims should be dismissed because the allegations fail to support plausible claims for relief.  These claims consist of race discrimination, age discrimination, and retaliation.

### A.      Discrimination

The remaining claims of race and age discrimination relate only to Hamilton's non-selection for the two May 2017 Positions.  Title VII prohibits employment discrimination on the basis of race, 42 U.S.C. § 2000e-2(a), while the ADEA bars employment discrimination against individuals over the age of 40, 29 U.S.C. §§ 623(a)(1), 631(a).  Both statutes require a plaintiff to establish a claim through one of two methods.  The plaintiff may demonstrate through direct or circumstantial evidence that race or age "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).  Alternatively, the plaintiff may proceed through the approach adopted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), "under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination."  *Hill*, 354 F.3d at 285.

### 1.      Race Discrimination

As to Hamilton's race discrimination claim on the May 2017 NHC Patuxent River Position, Hamilton alleges specific direct or circumstantial evidence that the ultimate decision not to hire him was based on race, namely his allegation that during his initial phone interview, Lehr asked him to state the color of his eyes.  In a stunningly off-base statement, the Navy argues that Hamilton's inference of discriminatory intent from this question is "nonsensical" and summarily claims that "one cannot discern another person's race based on his eye color."  Mot. Dismiss at 13, ECF No. 41-1.  As a matter of common sense, because eye colors other than brown are exceedingly rare among African Americans and other non-white individuals, it is entirely fair to infer that a question about eye color could be asked to gain information about the race of an individual, as any answer other than brown would almost certainly identify the person as white.

Particularly where there is absolutely no justifiable reason for an employer to ask a job applicant to identify that individual's eye color, Hamilton's allegation about Lehr's question, combined with Hamilton's acknowledgment to Lehr that he is African American and his subsequent non-selection, provides sufficient direct or circumstantial evidence of discrimination at the pleading stage.

Although Hamilton has made no allegation of a similar question on the part of Kilpatrick, who made the decision not to interview Hamilton for the May 2017 NBHC Indian Head Position, Hamilton has alleged that Kilpatrick was a friend of Lehr, that Kilpatrick joined Lehr on the interview panel for the May 2017 NHC Patuxent River Position, that the two supervisors discussed Hamilton as a candidate for an Industrial Hygienist position, and that Kilpatrick's decision not to interview Hamilton for the May 2017 NBHC Indian Head Position came soon after the decision was made not to hire him for the May 2017 NHC Patuxent River Position.  Based on these allegations, the Court cannot sufficiently disentangle these two hiring processes so as to conclude that any discriminatory intent of Lehr did not improperly influence Kilpatrick's decision.

Moreover, even if Lehr's question does not provide specific evidence of discriminatory intent as to both May 2017 Positions, Hamilton has sufficiently alleged a *prima facie* case of race discrimination pursuant to *McDonnell Douglas.* In order to state a *prima facie* case of discrimination based on a failure to hire, a complaint must adequately allege that the plaintiff:  (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position "under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F. 3d 898, 902 (4th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802). As to the fourth prong, a plaintiff need only show that the position at issue was filled by an individual who was not a member of the protected class. *See Carter v. Ball*,

33 F.3d 450, 458–59 (4th Cir. 1994) (holding that to satisfy the fourth prong, the plaintiff, who was African American, "need only show that the position was filled by a white applicant"). Although it is not strictly necessary for a plaintiff to establish all elements of a *prima facie* case in the complaint, a plaintiff must allege sufficient facts to support a plausible inference of discrimination and thereby raise a right to relief above the speculative level.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Coleman v. Md. Ct. Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, Hamilton has alleged that he is African American, a fact which he told Lehr during the May 23 phone interview.  Although the Navy argues that Hamilton has not sufficiently alleged that he was qualified for the position, Hamilton's assertions that he previously held the position of Industrial Hygienist with the Navy for 11 years and received outstanding and exceeding expectations ratings for such work, and his statement that he was one of four candidates referred pursuant to the federal hiring process to be considered for an interview for the NBHC Indian Head Position, are sufficient to meet this element.  Hamilton has also alleged that despite his qualifications, he was rejected for the NHC Patuxent River Position, the position was offered to two candidates who were younger or not African American, and that when they declined the position, the position remained open.  At this stage of the proceedings, these allegations are sufficient for Hamilton's race discrimination claim to proceed as to the NHC Patuxent River Position.  Where, as discussed above, the hiring processes for the two May 2017 Positions were in many ways intertwined, the Court finds sufficient allegations to proceed on the race discrimination claim relating to the May 2017 NBHC Indian Head Position as well.

### 2.    Age Discrimination

On the age discrimination claims relating to the May 2017 Positions, although Hamilton has asserted that he told Lehr that he is over 40 years old, he has not offered direct or circumstantial evidence of discriminatory intent.  Nevertheless, he may proceed because he has alleged sufficient facts to support a *prima facie* case of age discrimination, which consists of a showing that:  (1) the plaintiff was at least 40 years old; (2) the employer had an open position for which he was qualified; (3) he was rejected despite being qualified; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, regardless of whether that applicant is also a member of the protected class.  *Laber,* 438 F.3d at 430.

Hamilton has alleged that he was over 40 years old, a fact which he told Lehr during the May 23 phone interview, and that the positions were either filled by younger applicants or left vacant.  As discussed above in relation to the race discrimination claims, the remaining elements have been satisfied.  These claims may proceed.

### B.    Retaliation

A retaliation claim may be analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 550–51 (4th Cir. 2006).  To adequately plead a *prima facie* case of retaliation, a plaintiff must allege facts that, when credited, establish that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) "there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015).

In challenging the sufficiency of Hamilton's retaliation allegations, the Navy argues that Hamilton has failed to provide sufficient allegations to show (1) that he engaged in a protected

activity that could support a charge of retaliation; and (2) that there was a causal link between the protected activity and his non-selection for the positions.

### 1.    Protected Activity

Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3.  Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e–2. Courts take an "expansive view of what constitutes oppositional conduct." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015).  It "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).  To qualify as protected activity, the employment practices opposed may be either "actually unlawful under Title VII" or reasonably believed by the employee to be unlawful. *Boyer–Liberto*, 786 F.3d at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397 (4th Cir. 2005)).  To qualify as protected activity, an employee's complaints must still communicate "a belief that the employer has engaged in ... a form of employment discrimination" based on a protected class.  *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276, (2009); *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 685–86 (4th Cir. 2009) (emphasizing, when applying Title VII retaliation analysis to an ADEA claim, that "it is fundamental" that a plaintiff must have engaged "in activities opposing discrimination").

Here, as to the May 2017 Positions, Hamilton's statements in response to Lehr's question about his eye color, that eye color should not have anything to do with a hiring decision and that he was in a protected class based on his race and his age, can be fairly construed as a

communication by Hamilton expressing his opposition to an employer's allegedly discriminatory practice. *Laughlin*, 149 F.3d at 259. As discussed above, because the Court disagrees with the Navy's claim that the question about eye color is entirely unrelated to race, it necessarily rejects the Navy's contention that Hamilton lacked a reasonable belief that Lehr's questioning reflected a discriminatory purpose. Thus, Hamilton has adequately alleged protected activity giving rise to his retaliation claims relating to these two positions.

As for the Eight Positions, where Hamilton alleges that he was not hired for any of those positions in retaliation for his filing of the First EEO Complaint against Kilpatrick, there is no dispute that such a filing constitutes protected activity under Title VII.

## 2. Causation

The Navy's claim that Hamilton has insufficiently alleged causation fails as to the May 2017 Positions. Although the Navy argues that Hamilton has failed adequately to allege that Lehr and Kilpatrick knew of his protected activity, he specifically alleged that his statement opposing discrimination was made to Lehr during the May 23, 2017 telephone interview, and that Lehr and Kilpatrick, who were already friends, discussed Hamilton's candidacy for Industrial Hygienist positions when they were both on the panel for Hamilton's second interview for the May 2017 NHC Patuxent River Position, only one day after Hamilton's statement to Lehr. Drawing all inferences in favor of the plaintiff, as is required at this stage of the case, the Court finds that one could reasonably infer that Lehr and Kilpatrick discussed the content of the May 23 phone interview with Lehr, and thus that Kilpatrick was aware of Hamilton's comment. Moreover, where the materially adverse actions of denying Hamilton the May 2017 NHC Patuxent River Position and denying him even an interview for the May 2017 NBHC Indian River Position occurred within days or at most a few weeks after the protected activity, the temporal proximity is alone enough to

establish causation for purposes of a *prima facie* case.  *See Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017) ("[F]or purposes of establishing a *prima facie* case [of retaliation], close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.").  The Court thus finds that Hamilton has adequately pleaded retaliation claims relating to the May 2017 Positions.

As for the Eight Positions, the Navy argues that Hamilton has not sufficiently alleged a causal link between his filing of the First EEO Complaint on August 23, 2017 and the failure to hire him for those positions because he has not alleged that the hiring officials were the same, and the passage of time rendered any causal link too attenuated.  Following the denial of the May 2017 Positions, the next position denied to Hamilton was the December 20, 2017 Position, which was posted approximately three months after the protected activity.  Where this appears to be the first Industrial Hygienist opening following the protected activity, the Court finds that the temporal proximity was sufficient to support a plausible claim of causation at the *prima facie* case stage. *See id.*; *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (holding that, although it was "a very close question," a plaintiff established a *prima facie* case of retaliation despite a "nine to ten month" gap between the protected activity and the adverse decision).

Although the other seven positions were denied to Hamilton at later dates, several at approximately six-month intervals, they occurred when positions came open and thus arguably occurred at the next available opportunities for retaliation.  Though the lack of clarity on the identity of the hiring officials weighs against Hamilton, he also alleges that he was not granted interviews for these positions, even though he had once been given an interview; that after the hiring processes, the Navy chose not to fill the positions at all rather than grant him an interview; and that when asked, Navy officials gave a series of reasons for his rejection that were false and

thus arguably pretextual.  He also alleges circumstances under which it appeared that a position was re-posted for a short period of time when the Navy knew he remained interested in a position but was out of the country. When these additional allegations are considered and viewed in the light most favorable to Hamilton, the Court finds that Hamilton has stated sufficient allegations to support his retaliation claims as to all of the positions.  The Motion will be denied as to the retaliation claims.

**CONCLUSION**

For the foregoing reasons, the Navy's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.  It will be granted as to the race and age discrimination claims relating to the eight positions other than the May 2017 NHC Patuxent River and NBHC Indian Head Positions, and any retaliation claims relating to those eight positions based on any protected activity other than the filing of the First EEO Complaint.  It will be otherwise denied.  A separate Order shall issue.

Date:  February 16, 2021                                    /s/    *Theodore D. Chuang*
                                                           THEODORE D. CHUANG
                                                           United States District Judge